# No. 24-1557

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARK BULLER & SARAH BEATTY,

*Petitioners-Appellants*

v.

COMMISSIONER OF INTERNAL REVENUE

*Respondent-Appellee,*

United States Tax Court (No. 25011-22)
Hon. J. Kerrigan

## BRIEF AMICUS CURIAE OF
## THE CENTER FOR TAXPAYER RIGHTS
## IN SUPPORT OF APPELLANT

Audrey Patten
*Counsel for Amicus*
The Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 384-0734
apatten@law.harvard.edu

Prof. Emeritus T. Keith Fogg
*Counsel for Amicus*
The Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390-2532
kfogg@law.harvard.edu

Carlton M. Smith, Esq.
*Counsel for Amicus*
255 W. 23rd Street #4AW
New York, NY 10011
(646) 230-1776
carltonsmth@aol.com

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS...……………………………………….……iii

TABLE OF AUTHORITIES...……………………………...…………. v

STATEMENT OF THE PARTIES CONSENT……………..……………x

CORPORATE DISCLOSURE STATEMENT………….………… ……xi

INTEREST OF THE *AMICUS*...……………………………..….....1

SUMMARY OF ARGUMENT ………………………………….…..2

ARGUMENT…………………………………………………….... 3

I.    The Tax Court Needlessly Expends Considerable
Judicial Resources Each Month Incorrectly Policing
Petition Filing Deadlines as a Jurisdictional Issue………………..3

    A. Taxpayers Harmed by the Tax Court's Current Approach…..….4

        1. The Tax Court Bars *Sua Sponte* Many Taxpayers Who
Could Move Forward……………………………………...5

        2. The IRS Filing Belated Motion to Dismiss Harms Taxpayers
Who Have Already Invested in Pursuing Their Cases……8

        3. Current Tax Court Practice Bars Taxpayers Whose
Circumstances in Late-Filing Petitions Would Qualify for
Equitable Tolling………………………………………9

    B. The IRS is Administering *Culp* to Benefit Third Circuit
Taxpayers Over Taxpayers Living in Other Circuits………….12

II.   A Finding that the Petition Guideline in Section 6213(a) is Not
      Jurisdictional is Consistent with Section 7459(d)……..………….16

III.  The True Grant of the Tax Court's Deficiency Jurisdiction Resides
      in Sections 6214(a) and 6512(b)(1)………………………….……21

IV.   Finding That Section 6213(a)'s Deadline is Not Jurisdictional is
      Consistent with the Taxpayer Bill of Rights in Section 7803(a)(3).24

CONCLUSION ………………………………………………………... 26

CERTIFICATE OF COMPLIANCE…………………………...……….28

CERTIFICATE OF SERVICE………………………………………..29

iv

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdo v. Comm'r*, 162 T.C. No. 7 (Apr. 2, 2024)..................................13 fn. 8

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ............................................. 24

*Barnabas v. Comm'r*, T.C. Docket No. 20219-21S ..................................... 11

*Boechler, P.C. v. Comm'r*, 596 U.S. 199 (2022)..................................*Passim*

*Brown v. Comm'r*, T.C. Docket No. 14180-20............................................ 10

*Cawman v. Comm'r*, T.C. Docket No. 27136-23 (Nov. 2, 2023) .........13 fn.7

*Cook v. Comm'r*, T.C. Docket No. 11297-20S............................................. 11

*Costello v. Comm'r*, T.C. Docket No. 8656-23S (Mar. 15, 2024) .......13 fn. 8

*Cox v. Comm'r*, T.C. Docket No. 3217-21S................................................. 10

*Culp v. Comm'r*, 75 F.4th 196 (3rd Cir. 2023)....................................*Passim*

*Culp v. Comm'r*, T.C. Docket No. 14054-21 ............................................... 10

*Darnell v. Comm'r*, T.C. Docket No. 31155-21S........................................ 10

*Dawalt v. Comm'r*, T.C. Docket No. 7943-23 (Aug. 5, 2024)............13 fn. 8

*Ennis v. Comm'r*, T.C. Docket No. 9880-23 (Jan. 12, 2024)..............13 fn. 8

*Estate of Young v. Comm'r*, 81 T.C. 879 (1983) ......................................... 21

*Flora v. United States*, 362 U.S. 145 (1960) ......................................... 17, 19

*Fogerty v. Comm'r*, T.C. Docket No. 15224-21............................................ 8

*Giles v. Comm'r*, T.C. Docket No. 9729-22 (Jun. 24, 2024) ..............13 fn. 8

*Hackett v. Comm'r*, T.C. Docket No. 8287-23 (May 8, 2024).............13 fn. 8

*Hallmark Research Collective v. Comm'r*, 159 T.C. No. 6 (Nov. 29, 2022)………………………………………………..2, 5 fn. 4, 7 fn. 5, 16

*Hamer v. Neighborhood Hous. Serv.*, 583 U.S. 17 (2017)........................... 14

*Henderson v. Shinseki*, 562 U.S. 428 (2011)................................................. 24

*Holland v. Florida*, 560 U.S. 631 (2010) ...................................................... 15

*Jolly v. United States*, 167 Fed. Cl. 249 (2023).................................. 18 fn. 10

*Jolly v. United States*, No. 20-412, 2021 WL 2026697 (Fed. Cl. May 20, 2021).......................................................................................... 18 fn. 10

*Jones v. Comm'r*, T.C. Docket No. 1494-21 ................................................. 10

*Klein v. Comm'r*, T.C. Docket No. 7015-23 (Dec. 26, 2023) .............. 13 fn. 7

*Kneas v. Comm'r*, T.C. Docket No. 9011-22 (Aug. 12, 2024)............. 13 fn. 8

*Lewis-Hall Iron Works v. Blair*, 23 F.2d 972 (D.C. Cir. 1928)................... 23

*Liu v. Comm'r*, T.C. Docket No. 8068-23 (Feb. 6, 2024) .................... 13 fn. 7

*Lowe v. Comm'r*, T.C. Docket No. 4629-20 (Apr. 23, 2024).............. 13 fn. 8

*Lozano v. Montoya-Alvarez*, 572 U.S. 1 (2014) ........................................... 15

*Menominee Indian Tribe of Wisconsin*, 577 U.S. 250 (2016) ...................... 15

*Moroney v. Comm'r*, T.C. Docket No. 3084-23 (Nov. 2, 2023) .......... 13 fn. 8

*Moyer v. Comm'r*, T.C. Memo. 2016-236.................................................... 23

*Nanchanatt v. Comm'r*, T.C. Docket No. 8304-23S (Feb. 20, 2024) ..13 fn. 7

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005).................................................. 15

*Parrott v. Comm'r*, T.C. Docket No. 9927-21S ........................................... 10

*Patel v. Comm'r*, T.C. Docket No. 4466-23S (Mar. 6, 2024) .............. 13 fn. 7

*Perez-Ruiz v. Comm'r*, T.C. Docket No. 2390-23 (Mar. 11, 2024) ..... 13 fn. 7

*Rahman v. Comm'r*, T.C. Docket No. 9166-23 (Apr. 15, 2024) .......... 13 fn. 8

*Ray v. Comm'r*, T.C. Docket No. 11885-20 ...................................................... 8

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ................................. 24

*Sanders v. Comm'r*, 161 T.C. No. 8 (Nov. 2, 2023) ......................... 5 fn. 4, 20

*Satovsky v. Comm'r*, 1 B.T.A. 22 (1924) ...................................................... 23

*Schnee v. Comm'r*, T.C. Docket No. 4383-23 (Nov. 2, 2023) ............. 13 fn. 8

*Spears v. Comm'r*, T.C. Docket No. 6232-21 (order of May 18, 2022). 5 fn. 4

*Thoma v. Comm'r*, T.C. Memo. 2020-67 ........................................................ 23

*Tilden v. Comm'r*, 846 F.3d 882 (7th Cir. 2017) ......................................... 7-8

*Trimble v. Comm'r*, T.C. Memo. 2018-36 ................................................. 23-24

*United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) .............................. 24

*Vito v. Comm'r*, T.C. Docket No. 14158-20 .................................................... 8

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ........................... 24

**Statutes & Regulations**

FRAP 29(a)(4)(e)…………………………………………………..1 fn. 1

26 U.S.C.:

§501(c)(3) ........................................................................................................ 1
§6213(a) ...................................................................................................*Passim*
§6214(a) ..................................................................................... 3, 21,22,23,24
§6214(b) ......................................................................................................... 22
§6330(d)(1) ...................................................................................................... 2
§6511(a) ......................................................................................................... 17

§6512(b)(1) ........................................................................ 3, 21, 22
§7422(a) ..................................................................................... 17
§7459(d) ......................................................................... 2, 16, 17
§7502 ........................................................................................... 7
§7803(a)(3) ........................................................... 3, 14, 24, 25
§7803(c)(1)(B) ............................................................................ 1

The Revenue Act of 1924 43 Stat. 253 (June 2, 1924):

§274(a) ...................................................................................... 21
§279 ............................................................................................ 21
§312 ............................................................................................ 21
§900(e) ....................................................................................... 21

The Revenue Act of 1926, 44 Stat. 9 (1926):

§274(a) ...................................................................................... 22
§274(e) ...................................................................................... 22
§274(g) ...................................................................................... 22
§284(e) ...................................................................................... 22

## Other Authorities:

H.R. Rep. No. 69-1 (1925) ........................................................ 23

H.R. Rep. No. 356 (1926) (Conf. Rep.) ................................... 23

IRS Publication 3598 (rev. 11-2023), "What You Should Know About The Audit Reconsideration Process" ................................. 20

IRS, Internal Revenue Service Data Book 2022, Pub. 55-B (2023), https://www.irs.gov/pub/irs-prior/p55b--2023.pdf ................................... 17

IRS, Internal Revenue Service Data Book 2023, Pub. 55-B (2023), https://www.irs.gov/pub/irs-prior/p55b--2023.pdf ................................... 17

Legislative Recommendation #3 ("Make the Time Limits for Bringing Tax Litigation Subject to the Judicial Doctrines of Forfeiture, Waiver,

Estoppel, and Equitable Tolling . . . ."), Vol. 1, at 283-292 (the "2017 Annual Report to Congress"), available at www.irs.gov .......................... 25

*Nat'l Taxpayer Advocate 2017 Annual Report to Congress* (2017) ........... 25

*Nat'l Taxpayer Advocate 2023 Annual Report to Congress* (2023) ............ 18

*Nat'l Taxpayer Advocate 2024 Purple Book* (2024) ................................... 25

S. REP. NO. 69-52 (1925) .............................................................................. 23

Tax Court Rule 39 .................................................................................. 4 fn. 3

U.S. Tax Court Congressional Budget Justification Fiscal Year 2025 (Mar. 4, 2024) .......................................................................................................... 18

## STATEMENT OF THE PARTIES' CONSENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amicus curiae* the Center for Taxpayer Rights states that, through its counsel, it has consulted with both the Appellant and Appellee in this case and that both consent to the filing of this brief.

Date: September 17, 2024

/s/ *Audrey Patten*
Audrey Patten

*Counsel for* Amicus Curiae

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* the Center for Taxpayer Rights states that it is a non-profit, tax-exempt organization incorporated in Virginia. The Center has no parent corporation, and no publicly held corporation holds a ten percent or greater ownership stake in the Center.

Date: September 17, 2024

*/s/ Audrey Patten*
Audrey Patten

*Counsel for* Amicus Curiae

# INTEREST OF THE *AMICUS*[1]

The Center for Taxpayer Rights ("the Center") is a § 501(c)(3)[2] non-profit corporation dedicated to furthering taxpayers' awareness of and access to taxpayer rights. The Center accomplishes its mission, in part, by educating the public and government officials about the role taxpayer rights play in promoting compliance and trust in systems of taxation. The Executive Director of the Center is Nina E. Olson, who, from 2001 through 2019, served as the Internal Revenue Service ("IRS") National Taxpayer Advocate, appointed under § 7803(c)(1)(B). The Center also operates a low income taxpayer clinic, providing pro bono legal representation to low income taxpayers in tax disputes with the IRS and before the courts.

Counsel for the Center is the Tax Litigation Clinic of the Legal Services Center of Harvard Law School ("the Clinic"). The Clinic represents low-income taxpayers before the IRS and in tax matters before the courts, including cases of deficiency, "Collection Due Process" ("CDP"), and "innocent spouse relief" in the

---

[1] Pursuant to the Federal Rules of Appellate Procedure (FRAP) 29(a)(4)(E), this is to affirm that no party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26.

Tax Court and in the Courts of Appeals. The Clinic is housed within the Legal Services Center, a public interest law firm that is part of Harvard Law School.

## SUMMARY OF ARGUMENT

The Tax Court has long held that its 90-day petition filing deadline under §6213(a) is jurisdictional. *Hallmark Research Collective v. Comm'r*, 159 T.C. No. 6 (Nov. 29, 2022). However, in *Boechler, P.C. v. Commissioner*, the United States Supreme Court held that the 30-day deadline in §6330(d)(1) to file a Tax Court CDP petition is non-jurisdictional and subject to equitable tolling. 596 U.S. 199 (2022). Applying the principles in the *Boechler* opinion, the Third Circuit recently held that the 90-day deadline in §6213(a) to file a Tax Court deficiency petition is also non-jurisdictional and subject to equitable tolling. *Culp v. Comm'r*, 75 F.4th 196 (3rd Cir. 2023).

*Amicus* believes that this Court should follow the Third Circuit's lead and hold that the Tax Court was incorrect in finding that the 90-day deadline in §6213(a) is not jurisdictional. Congress has made no clear statement that the deadline in §6213(a) is jurisdictional, and there is no line of United States Supreme Court opinions holding the deadline jurisdictional. In the absence of any good reason why Congress would want the deadline not to be subject to equitable tolling, it should be.

2

*Amicus* provides support for this position from its perspective and expertise as an advocate for individual taxpayer rights. Specifically, it argues that treating §6213(a) as containing a jurisdictional deadline: (1) forces judges into the wasteful role of policing jurisdiction; (2) is inconsistent with the statutory scheme in §7459(d); (3) ignores that the true grant of Tax Court deficiency jurisdiction is in §§6512(a) and 6214(a); and (4) is not in line with the goals of the Taxpayer Bill of Rights under §7803(a)(3).

## ARGUMENT

This brief primarily discusses the practical consequences of rulings on jurisdictional and equitable tolling issues.

### I. The Tax Court Needlessly Expends Considerable Judicial Resources Incorrectly Policing Petition Filing Deadlines as a Jurisdictional Issue.

A finding that the 90-day petition filing deadline in §6213(a) is not jurisdictional would significantly free up judicial resources. The unfortunate consequence of the Tax Court's current jurisdictional position is that its judges must police the issue of whether a petition was timely filed by raising it *sua sponte* when the IRS does not. Considerable judicial resources are invested in this policing, without any indication that Congress ever desired this outcome. Should the filing deadline be held non-jurisdictional, Tax Court judges would cease raising

the issue of late filing *sua sponte*.  Further, the Tax Court rules allow the IRS to raise the issue of late filing at any stage in the case, even on the eve of trial. The Tax Court would likely limit the time in which the IRS could add late filing as an issue in the case if it had not raised the issue its answer to the petition.[3]

### A. Taxpayers Harmed by the Tax Court's Current Approach

Three kinds of taxpayers are potentially hurt by the Tax Court's jurisdictional interpretation of the deadline:

(1) taxpayers in cases where the IRS did not notice or care that the deficiency petitions were filed late, but where the Tax Court noticed and cared and issued orders to show cause why the taxpayers' cases should not be dismissed for lack of jurisdiction,

(2) taxpayers in cases where the IRS did not raise late filing early in the case, but where the IRS filed answers not mentioning late filing and where the IRS, later in the case, moved for dismissal for lack of jurisdiction for late filing, and

(3) taxpayers who could successfully invoke equitable tolling.

---

[3] Statute of limitations defenses are required to be specially pled in Tax Court answers.  Tax Court Rule 39.

4

If the filing deadline is held non-jurisdictional, the Tax Court will cease policing the filing deadline and will no longer issue orders to show cause concerning late filing.  In such instances, the Tax Court may also stop the IRS from raising the issue of late filing of the petition for the first time late in the case.

> **1. The Tax Court Bars *Sua Sponte* Many Taxpayers Who Could Otherwise Move Forward**

To get an overall sense of how many Tax Court deficiency cases might be affected by a holding that the petition deadline is not jurisdictional, one first must estimate how many deficiency suits each year are currently dismissed for lack of jurisdiction for late filing.  To review all such dismissals over an entire year is a substantial undertaking; thus, the Clinic reviewed such dismissals only in the months of February and March 2022 – the last full months before the Supreme Court's April 21, 2022 ruling in *Boechler*.[4]  Using the Tax Court website's

---

[4] It is not practical to use months after March 2022 for making estimates, since, beginning in April 2022, the Tax Court began suspending rulings on motions to dismiss late-filed deficiency cases and then, after the suspensions were over, to issue a higher volume of dismissal orders each month.  Because of the April 21, 2022 *Boechler* opinion, it may be that some Tax Court judges suspended rulings in deficiency cases during late April 2022.  Then, the Tax Court stopped issuing dismissal orders in *all* late-filed deficiency cases until the Tax Court issued its opinion in *Hallmark*, 159 T.C. No. 6 (holding the deficiency deadline still jurisdictional after *Boechler*).  *See, e.g., Spears v. Comm'r*, T.C. Docket No. 6232-21 (order of May 18, 2022) (pausing ruling on motion to dismiss until an opinion was issued in *Hallmark*).  For approximately eight months after *Hallmark*, the Tax Court dismissed an unusually large number of late-filed deficiency cases (catching up ruling by the end in probably all the suspended cases).  Then, after the Third

DAWSON function and searching orders for "lack of jurisdiction and timely" and "lack of jurisdiction and untimely," the Clinic uncovered 103 deficiency dismissal orders for late filing.  Multiplying that number by 6 yields an annual estimated 618 cases.

How does one estimate the annual number of taxpayers who end up dismissed from the Tax Court because of an order to show cause that was later made absolute?  The same DAWSON searches of orders covering the months of February and March 2022 revealed 34 orders to show cause in possible late-filed deficiency cases.  Of those 34 cases, the order was later made absolute in 12 cases and discharged in 22 cases (where the taxpayer or the IRS explained to the court why the petition was timely, despite the appearance of late filing).  Annualized, one would then expect 72 cases per year (i.e., multiplying 12 x 6) where a case is dismissed for lack of jurisdiction for late filing solely because of the court's issuance of an order to show cause and 132 cases per year (i.e., multiplying 22 x 6) where an order to show cause will be issued but will not lead to dismissal, thereby

---

Circuit *Culp* decision, the Tax Court again suspended all rulings for a few weeks, then transitioned to a system of granting dismissals in late-filed deficiency situations only in cases appealable to those circuits which apparently had precedential rulings holding the filing deadline jurisdictional (i.e., all but the First, Third, and Fourth Circuits). *Culp v. Comm'r*, 75 F.4th 196 (3rd Cir. 2023).  After issuing its opinion in *Sanders v. Comm'r*, 161 T.C. No. 8 (Nov. 2, 2023), the Tax Court resumed granting dismissals of late-filed deficiency petitions for lack of jurisdiction in cases appealable to all circuits, except the Third.

having wasted the court's and the parties' time. The 72 taxpayers dismissed each year will have been deprived of their prepayment forum only because the Tax Court treats the filing deadline as jurisdictional and so, *sua sponte*, issues orders to show cause.[5]

A related example of overusing judicial resources due to the Tax Court's treatment of the filing deadline as jurisdictional is when the IRS agrees with the taxpayer that a petition was timely filed and so does not file a motion to dismiss, but the Tax Court disagrees. In *Tilden v. Commissioner*, the parties initially disputed whether a deficiency petition had been timely filed under the rules of §7502. 846 F.3d 882 (7th Cir. 2017). Section 7502 provides a timely-mailing-is-timely-filing rule applicable to Tax Court petitions. The initial dispute concerned which regulatory provision applied to the case. By the time the Tax Court wrote its opinion, the parties agreed that the petition was timely filed. However, the Tax Court disagreed and dismissed the petition for lack of jurisdiction as untimely.

---

[5] On April 1, 2022, the Tax Court initially dismissed for lack of jurisdiction the deficiency petition filed one day late in *Hallmark*, 159 T.C. No. 6. The opinion is a ruling on a motion to vacate that dismissal in light of *Boechler*. The company had filed its petition on September 2, 2021– late because its accountant had been sick with COVID and had closed his office. The company sought equitable tolling. The IRS answered the petition on November 10, 2021, making no mention of the late filing. On November 17, 2021, the court, *sua sponte*, issued an order to show cause why the case should not be dismissed for lack of jurisdiction for late filing.

Ultimately, the Seventh Circuit agreed with the parties about the applicable regulation and allowed the case to proceed in Tax Court.

### 2. The IRS Filing Belated Motions to Dismiss Harms Taxpayers Who Have Already Invested in Pursuing Their Cases.

The IRS sometimes files answers that do not raise late filing as an issue, but then, shortly before the cases are to go to trial, the IRS belatedly raises the issue as a reason to dismiss the cases for lack of jurisdiction. Three such eve-of-trial motions to dismiss for lack of jurisdiction were granted in February and March 2022. *See Vito v. Comm'r*, T.C. Docket No. 14158-20 (motion filed 23 days prior to start of trial calendar); *Ray v. Comm'r*, T.C. Docket No. 11885-20 (90 days before); *Fogerty v. Comm'r*, T.C. Docket No. 15224-21 (21 days before). While it is not certain whether the Tax Court would have allowed the IRS to file an amendment to its petition raising late filing as a statute of limitations defense, for purposes of this case, it seems sensible to project that annually (i.e., multiplying by 6) there will be about 18 cases so dismissed due to the treatment of the filing deadline as jurisdictional that probably would not be if the deadline was treated as non-jurisdictional.

Combining the 72 annual cases that were dismissed only because the Tax Court issued an order to show cause and the 18 annual dismissals of cases because of motions to dismiss filed late in the case, one can estimate that about 90

taxpayers a year are currently dismissed from the Tax Court who would not be if this Court were to hold the deficiency petition filing deadline non-jurisdictional. Ninety dismissals account for roughly 15% of the 618 estimated annual dismissals of late-filed deficiency petitions for lack of jurisdiction.

> **3. Current Tax Court Practice Bars Taxpayers Whose Circumstances in Late-Filing Petitions Would Qualify for Equitable Tolling.**

Other taxpayers are harmed for a different reason – because, outside the Third Circuit, the Tax Court will not allow the deficiency petition filing deadline to be equitably tolled. This Court should not assume that floodgates will open if it allows equitable tolling of the deficiency petition filing deadline. *Culp*, 75 F.4th at 204 ("[W]e doubt our holding will encourage more taxpayers to file untimely petitions in the (longshot) hopes of bringing a successful equitable tolling argument."). Of the 103 dockets dismissed for lack of jurisdiction for late filing in February and March 2022, in 65 instances, the taxpayer either (1) filed no response to a motion to dismiss or order to show cause why a petition should be dismissed for lack of jurisdiction for late filing or (2) informed the court or the IRS attorney (who informed the court) that the taxpayer did not object to the dismissal of the case. In 30 dockets, taxpayers responded and objected to dismissal, but

argued only the merits of the case or made arguments that did not address the issue of late filing. Only in the following 8 cases did the taxpayers raise arguments that might possibly have given rise to equitable tolling if the facts were further developed:

(1) *Parrott v. Comm'r*, T.C. Docket No. 9927-21S (order of dismissal of Feb. 7, 2022) (alleging illness).

(2) *Culp v. Comm'r*, T.C. Docket No. 14054-21 (order of dismissal of Feb. 15, 2022) (alleging nonreceipt of the notice of deficiency) – later overruled by the Third Circuit opinion in *Culp*.

(3) *Brown v. Comm'r*, T.C. Docket No. 14180-20 (order of dismissal of Mar. 14, 2022) (alleging nonreceipt of the notice of deficiency).

(4) *Darnell v. Comm'r*, T.C. Docket No. 31155-21S (order of dismissal of Mar. 17, 2022) (alleging illness of taxpayer and death of close family members and friends).

(5) *Jones v. Comm'r*, T.C. Docket No. 1494-21 (order of dismissal of Mar. 21, 2022) (alleging late receipt of the notice of deficiency and COVID-related delays in mailings).

(6) *Cox v. Comm'r*, T.C. Docket No. 3217-21S (order of dismissal of Mar. 25, 2023) (alleging health issues).

(7) *Cook v. Comm'r*, T.C. Docket No. 11297-20S (order of dismissal of

Mar. 28, 2022) (alleging death of parent and COVID issues).

(8) *Barnabas v. Comm'r*, T.C. Docket No. 20219-21S (order of dismissal of

Mar. 28, 2023) (alleging COVID issues).

Annualizing these 8 cases (i.e., multiplying by 6) would yield an estimate of

48 cases in which the judges of the Tax Court might face equitable tolling issues.

Considering all the judicial time saving that would occur if the filing deadline were

non-jurisdictional, the Tax Court judges (currently 32 in number – including

judges in senior status and special trial judges) could easily deal with those

hypothetical 48 cases.

Moreover, to date, the IRS appears to have conceded timely filing in nearly

every case where a taxpayer has alleged any facts under which equitable tolling

might arguably apply. Equitable tolling has been available in Tax Court

whistleblower award cases for over five years; *Myers v. Comm'r*, 928 F.3d 1025,

1036-1037 (D.C. Cir. 2019);[6] in CDP cases for over two years; *Boechler,* 596 U.S.;

and in deficiency cases for over one year, though only in the Third Circuit. *Culp*,

75 F.4th 196. Yet the court has not yet been forced to rule on the factual issue of

equitable tolling more than once: In *Hauser v. Commissioner*, the court granted

---

[6] Whistleblower award cases are appealable only to the D.C. Circuit, regardless of
where the whistleblower resides. §7482(b)(1) (flush language).

equitable tolling in a CDP case where an employee of the court had erroneously told a *pro se* taxpayer that he had 90 days to file a CDP petition when he only had 30 days to do so.  T.C. Docket No. 9088-22L (order of June 16, 2023).

In sum, should the filing deadline be held non-jurisdictional, Tax Court judges would have to cease raising the issue of late filing *sua sponte*, and Tax Court judges would likely limit the time in which the IRS could add late filing as an issue in the case when the issue had not been raised in the IRS' answer to the petition.  Too much judicial time is being needlessly spent policing late filing only because of the Tax Court's misunderstanding of how the Supreme Court's presumption that filing deadlines are no longer jurisdictional applies to the Tax Court deficiency petition filing deadline.  Thus, too many taxpayers are being hurt by the jurisdictional label.

### B. The IRS Is Administering *Culp* to Benefit Third Circuit Taxpayers Over Taxpayers Living in Other Circuits.

On July 19, 2023, in *Culp*, the Third Circuit found that §6213(a) is not jurisdictional and that the 90-day deficiency deadline is subject to equitable tolling. It is therefore instructive to analyze what has happened in Tax Court cases appealable to the Third Circuit in the past year.  In short, taxpayers living in the Third Circuit's jurisdiction are being treated better than those living elsewhere.

To reach this conclusion, the Clinic used DAWSON to search for any orders in deficiency cases containing the word "Culp" in the months following that decision. Between July and September 2023, inclusive, the Tax Court issued 22 orders denying IRS Motions to Dismiss for Lack of Jurisdiction. As of September 7, 2024, 17 of those cases have since settled with a stipulated decision entered, meaning the taxpayer and the IRS reached agreement on those underlying issues. In six of those 17 cases, the stipulated decision includes an overpayment due to the taxpayer.[7] Because overpayments are not part of deficiency notices, this is a clear indication that IRS counsel worked with the taxpayers to reach a fair resolution on the merits. A further six of those 17 stipulated decisions showed no deficiency, and another four show a reduced deficiency, which likewise indicates an agreement based on the merits.[8] It is important to note that late-filing defenses for

---

[7] *See Cawman v. Comm'r*, T.C. Docket No. 27136-23 (Nov. 2, 2023); *Patel v. Comm'r*, T.C. Docket No. 4466-23S (Mar. 6, 2024); *Perez-Ruiz v. Comm'r*, T.C. Docket No. 2390-23 (Mar. 11, 2024); *Nanchanatt v. Comm'r*, T.C. Docket No. 8304-23S (Feb. 20, 2024); *Klein v. Comm'r*, T.C. Docket No. 7015-23 (Dec. 26, 2023); *Liu v. Comm'r*, T.C. Docket No. 8068-23 (Feb. 6, 2024).

[8] **No Deficiency**: *Dawalt v. Comm'r*, T.C. Docket No. 7943-23 (Aug. 5, 2024); *Kneas v. Comm'r*, T.C. Docket No. 9011-22 (Aug. 12, 2024); *Lowe v. Comm'r*, T.C. Docket No. 4629-20 (Apr. 23, 2024); *Moroney v. Comm'r*, T.C. Docket No. 3084-23 (Nov. 2, 2023); *Ennis v. Com'r*, T.C. Docket No. 9880-23 (Jan. 12, 2024); *Rahman v. Comm'r*, T.C. Docket No. 9166-23 (Apr. 15, 2024) (A caveat is that in the *Lowe* case, it may instead be that the IRS concluded that taxpayers were entitled to an extended filing deadline under section 7508A(d) on account of the COVID pandemic and the Tax Court's opinion in *Abdo v. Comm'r*, 162 T.C. No. 7 (Apr. 2, 2024). **Reduced Deficiency**: *Schnee v. Comm'r*, T.C. Docket No. 4383-

---

13

non-jurisdictional deadlines can be waived or forfeited. *See*, *Hamer v. Neighborhood Hous. Serv.*, 583 U.S. 17, 19-20 (2017). In none of these settled cases did the Tax Court issue a ruling on equitable tolling, and there is no evidence that any taxpayer asked for equitable tolling. Thus, the IRS implicitly waived or forfeited the late-filing argument as part of the 17 stipulated decisions.

These outcomes are positive for the administration of justice in the tax system and comport with the right to pay no more than the correct amount of tax. §7803(a)(3)(C). Taxpayers and the IRS in these cases were able to work out the right result. Furthermore, even among such a small proportion of cases that might push taxpayers to seek equitable tolling, the high standards for equitable tolling will apply in any hypothetical case in which the Court and IRS wish to dismiss a petition for lack of jurisdiction due to a late filing. The Supreme Court has developed a test over the past twenty years under which it weighs the facts and circumstances to decide whether a litigant should grant equitable tolling relief. Beginning with the context of *habeas corpus* cases in 2005, the Court's position is that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*,

---

23 (Nov. 2, 2023); *Hackett v. Comm'r*, T.C. Docket No. 8287-23 (May 8, 2024); *Giles v. Comm'r*, T.C. Docket No. 9729-22 (Jun. 24, 2024); *Costello v. Comm'r*, T.C. Docket No. 8656-23S (Mar. 15, 2024).

544 U.S. 408, 418 (2005); *See also*, *Holland v. Florida*, 560 U.S. 631, 649 (2010) ("a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.")

The Court later brought the two-pronged test beyond the *habeas* context. *See*, *Lozano v. Montoya-Alvarez*, 572 U.S. 1, 10 (2014) ("[a]s a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely court action.")  Later, in *Menominee Indian Tribe of Wisconsin*, the Court clarified that the two-prong test is the baseline rule for whether a litigant's failure to meet a federal statutory deadline warrants equitable tolling.  *Menominee Indian Tribe of Wisconsin*, 577 U.S. 250, 255 (2016).  The Court acknowledged that the test was developed in the *habeas* context but noted that if the litigant cannot even meet the two-pronged test articulated in *Pace* and *Holland*, then there is no need to develop a context-specific test, thereby indicating that the *Holland* two-pronged test is the bare minimum.  *Menominee Indian Tribe of Wisconsin*, 577 U.S. at 257, FN 2.

Therefore, to determine whether a litigant's failure to meet a federal statutory time requirement is fatal to the case under the doctrine of equitable tolling, courts must determine whether the litigant diligently pursued their rights

15

and whether extraordinary circumstances stood in their way. This is not an easy bar and one the Third Circuit also acknowledged in the *Culp* opinion. *See Culp*, 75 F.4th at 203. Given this high standard, the Tax Court will not regularly be granting equitable tolling to taxpayers in the few cases where the IRS does not concede the late-filing issue.

## II. A Finding that the Petition Deadline in Section 6213(a) is Not Jurisdictional is Consistent with Section 7459(d).

In the *Hallmark case*, the Tax Court made much of the government's argument that, under § 7459(d),[9] a dismissal of a Tax Court deficiency suit for a non-jurisdictional reason upholds the deficiency, so *res judicata* could apply in any subsequent refund suit in a United States District Court or the Court of Federal Claims. However, *res judicata* is an affirmative defense that the government could waive in such refund suits if it did not want to harm taxpayers who merely filed a late Tax Court petition. The government's *res judicata* concern is a red herring.

*Amicus* acknowledges that Appellants have briefed the Court as to §7459(d)'s legislative history and why it does not impact the jurisdictional question at issue.

---

[9] Section 7459(d) states: "If a petition for a redetermination of a deficiency has been filed by the taxpayer, a decision of the Tax Court dismissing the proceeding shall be considered as its decision that the deficiency is the amount determined by the Secretary. An order specifying such amount shall be entered in the records of the Tax Court unless the Tax Court cannot determine such amount from the record in the proceeding, or unless the dismissal is for lack of jurisdiction."

To supplement that argument, *Amicus* offers an overview of the practical effect of §7459(d) on taxpayers through the data it collected on the 618 taxpayers discussed in Section I above. Even assuming for purposes of discussion that *res judicata* is a serious concern, how many of those 618 taxpayers will, post-dismissal, pay the tax in full, file a timely refund claim, and eventually file a successful refund suit? *See* §§6511(a), 7422(a), and *Flora v. United States*, 362 U.S. 145 (1960) (full payment of deficiency is jurisdictional to refund suit). An estimate can be made by looking at case results under the current law where dismissals from the Tax Court for late filing (excepting those from the Third Circuit) are treated as jurisdictional and thus do not trigger *res judicata* under §7459(d).

In the fiscal years ending on September 30, 2022, and September 20, 2023, only 158 and 195 tax refund suits respectively were brought in the district courts and Court of Federal Claims, combined. IRS, Internal Revenue Service Data Book 2022, Pub. 55-B, 67 tbl. 29 (2023), https://www.irs.gov/pub/irs-prior/p55b--2023.pdf; IRS, Internal Revenue Service Data Book 2023, Pub. 55-B, 69 tbl. 31 (2023), https://www.irs.gov/pub/irs-prior/p55b--2023.pdf. Obviously, not all those suits were brought by taxpayers who had previously filed late deficiency petitions in the Tax Court. Indeed, there is serious doubt that any of those refund suits followed Tax Court deficiency suits dismissed for late filing.

To search for the fact pattern in refund suit opinions, the Clinic did LEXIS searches encompassing all opinions issued on any date in 2021, 2022, or 2023 using the search terms "refund and (Tax Court) and dismiss." Those searches retrieved 77 district court and 39 Claims Court opinions. None involved the fact pattern of the taxpayer previously having filed a late Tax Court deficiency suit that was dismissed for lack of jurisdiction and the subsequent full payment of the deficiency before a refund suit was brought.[10] Thus, it appears that taxpayers simply do not bring such refund suits.

The primary reason why no subsequent refund suits are brought, no doubt, is that so many Tax Court petitions are filed by *pro se* taxpayers who may not know their other tax procedure options. *See* U.S. Tax Court Congressional Budget Justification Fiscal Year 2025 (Mar. 4, 2024) at 22 (77% of Tax Court petitions filed in fiscal year ended September 30, 2023 were filed *pro se*); *Nat'l Taxpayer Advocate 2023 Annual Report to Congress* 158 (2023) ("In FY 2023, about 91 percent of cases petitioned to the Tax Court involved *pro se* taxpayers. . . [.]"). While some dismissal orders suggest that subsequent refund suits may be possible,

---

[10] The closest was *Jolly v. United States*, No. 20-412, 2021 WL 2026697 (Fed. Cl. May 20, 2021), and 167 Fed. Cl. 249 (2023), where the Tax Court dismissed a deficiency petition for 2017 for late filing and a refund suit was later brought for that year. However, in the Court of Federal Claims, the parties eventually stipulated that the IRS had never issued a notice of deficiency for 2017, and it appears that the taxpayer had not fully paid the disputed tax either.

18

not all such orders do. Secondly, few *pro se* taxpayers can afford or are willing to pay the full tax and sue for a refund as taxpayers are required to pay the disputed amount in full before initiating a refund suit under the *Flora* rule.

After the opinion in *Culp* was issued, the government, unsuccessfully seeking Third Circuit *en banc* review, offered the following new statistic, without saying how it was arrived at: "The Culps' amicus surmised that taxpayers almost never pursue refunds after the Tax Court dismisses their untimely deficiency petitions. (ECF No. 23 at 15-16.) But at least 55 taxpayers did just that between 2018 and September 2023, according to data available to the IRS." Notably absent from this statistic is the statement that any such refunds were pursued in court in refund suits. One can therefore assume that these refunds were only pursued administratively.

The Center has no way to challenge this unpublished IRS information based on non-public data. However, the period from January 1, 2018, to September 30, 2023, comprises roughly 6 years. Thus, even accepting the IRS figures, this works out to only about 9 administrative refund claims having been considered annually after the taxpayers' deficiency cases were dismissed from the Tax Court for late filing. How many of those refund claims were denied? In other words, how much of a benefit was it to taxpayers not to have *res judicata* apply when they filed their refund claims?

19

There may also be current instances where such dismissed taxpayers later successfully file for administrative audit reconsideration, without having paid the deficiency and thus without refund claims.  In his concurrence in *Sanders*, Tax Court Judge Buch raises the specter of the lost opportunity for taxpayers seeking relief through audit reconsideration. 161 T.C. No. 8, slip op. at 13-14.  However, the government does not publish statistics on the annual number of audit reconsideration requests generally, or the number of taxpayers who seek audit reconsideration after having been dismissed from the Tax Court for filing an untimely petition, or the success rate of the latter taxpayers in audit reconsideration.

In any event, audit reconsideration is not always available to taxpayers; it depends on what happened during the audit of their return. To receive an audit reconsideration, one must present documents or other information not presented prior to the issuance of the notice of deficiency.  IRS Publication 3598 (rev. 11-2023), "What You Should Know About The Audit Reconsideration Process." Against the absence of any significant number of taxpayers who would actually be harmed by treating the §6213(a) deadline as non-jurisdictional, real harm is posed to a significant number of taxpayers (and extra work for the Tax Court judges having to screen all cases for untimely filing) if the deadline is held jurisdictional.

### III.    The True Grant of the Tax Court's Deficiency Jurisdiction Resides in Sections 6214(a) and 6512(b)(1)

The Center further asserts that the jurisdictional grant to the Tax Court does not even come from §6213(a).  Section 6213(a) only speaks to the Court's injunctive power.  Rather, it is §§6214(a) and 6512(b)(1) that give the Tax Court jurisdiction to redetermine deficiencies set out in notices of deficiencies and to find overpayments.

The Revenue Act of 1924, which created the Board of Tax Appeals (the predecessor of the Tax Court), established deficiency procedures relative to personal income tax.  Section 274(a) of that act created the deficiency procedures applicable to income taxes.  It required the IRS to mail notices of deficiency and stated that "[w]ithin sixty days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900."  The word jurisdiction did not appear in §274.  Nor did §274, on its own, provide authority for the Board to hear cases.  That power came in §900(e), where Congress wrote, "The Board and its divisions shall hear and determine appeals filed under Section 274, 279, 308, and 312."  *See also*, *Estate of Young v. Comm'r*, 81 T.C. 879, 884 (1983) (Dawon, J., writing for the en banc court) ("The origin of this Court lies in the Revenue Act of 1924, which established the Board of Tax appeals…That act gave the Board jurisdiction to redetermine deficiencies determined by the Commissioner in a statutory notice.  Sec. 900(e), Revenue Act of 1924.")

21

Two years later, Congress altered the Revenue Act to add §274(e), which

provided:

> The Board **shall have jurisdiction** to redetermine the correct amount of the
> deficiency even if the amount so redetermined is greater than the amount of
> the deficiency, notice of which has been mailed to the taxpayer, and to
> determine whether any penalty, additional amount or addition to the tax
> should be assessed, if claim therefore is asserted by the Commissioner at or
> before the hearing. (Emphasis added)

This new provision in the Revenue Act of 1926 is the predecessor to the current

§6214(a).

Likewise, the 1926 changes provided for the first time in §274(g):

> The Board in redetermining a deficiency in respect of any taxable year shall
> consider such facts with relation to the taxes for other taxable years as may
> be necessary correctly to redetermine the amount of such deficiency, but in
> doing so **shall have no jurisdiction** to determine whether or not the tax for
> any other taxable year has been overpaid or underpaid. (Emphasis added)

The first sentence § 6214(b) is the successor to this provision.

Meanwhile, § 284(e) of the Revenue Act of 1926 added the following:

> If the Board finds that there is no deficiency and further finds that the
> taxpayer has made an overpayment of tax in respect of the taxable year in
> respect of which the Commissioner determined the deficiency, the Board
> **shall have jurisdiction** to determine the amount of such overpayment, and
> such amount shall, when the decision of the Board becomes final, be
> credited or refunded to the taxpayer. . . . (Emphasis added)

That provision is the predecessor to § 6512(b)(1).

What each of these new provisions in 1926 had in common was speaking to

the Board's jurisdiction to redetermine the amount of a deficiency originally

alleged by the IRS.  Yet while Congress was intentional in 1926 in adding jurisdictional language to these provisions, the only change it made to §274(a) was to exclude Sundays from ending the deficiency petition filing deadline.  It did not insert language about "jurisdiction" into that provision.  The Committee Reports from the time are silent as to this omission.  *See* H.R. REP. NO. 69-1, at 10-11, 17-21 (1925); S. REP. NO. 69-52, at 25-28, 34-38 (1925); H.R. REP. NO. 356, at 39-40, 53-55, 1939-1 C.B. (pt. 2) 361 (1926) (Conf. Rep.).  The only appearance of the word "jurisdiction" in §274(a)'s successor provision, §6213(a), came 62 years later in 1988 when "jurisdiction" was inserted to give the Tax Court injunctive powers to restrain tax collection while the deficiency case proceeded.

The judicial interpretation of the filing deadline itself as jurisdictional did begin early.  *See, Satovsky v. Com'r,* 1 B.T.A. 22, 24 (1924)*; Lewis-Hall Iron Works v. Blair*, 23 F.2d 972, 974 (D.C. Cir. 1928).  However, that does not mean that Congress intended the jurisdictional grant to determine or redetermine a deficiency to reside in the same location as the filing deadline.  The Tax Court itself has noted this in recent years.  *See, Thoma v. Comm'r*, T.C. Memo. 2020-67, at *2; ("Mr. and Ms. Thoma filed a timely petition for redetermination of the income-tax deficiencies and accuracy-related penalties for both years under section 6213(a).  We have jurisdiction under section 6214(a).");  *See also*, *Moyer v. Comm'r*, T.C. Memo. 2016-236, at *2; *Trimble v. Comm'r*, T.C. Memo. 2018-36,

23

at *2 ("Petitioner received a notice of deficiency and invoked the Court's jurisdiction by filing a petition for redetermination of a deficiency under section 6213(a). Section 6214(a) grants the Court jurisdiction to redetermine the correct amount of a deficiency . . . ."). In sum, since 1926, only § 6214(a) and its predecessors have provided the Tax Court with jurisdiction to redetermine deficiencies (both those set out in the notice and additional amounts sought in pleadings). Section 6213(a) and its predecessors have never provided the Tax Court with jurisdiction to redetermine deficiencies. This matters because if a jurisdictional grant is separated from the filing deadline, that indicates the deadline is not jurisdictional. *United States v. Kwai Fun Wong*, 575 U.S. 402, 411 (2015) ("This Court has often explained that Congress' separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional."); *See also*, *Henderson v. Shinseki*, 562 U.S. 428, 439–40 (2011); *Reed Elsevier, Inc.* v. *Muchnick*, 559 U.S. 154, 164–65 (2010); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-394 (1982).

## IV. Finding That Section 6213(a)'s Petition Deadline is Not Jurisdictional is Consistent with the Taxpayer Bill of Rights in Section 7803(a)(3).

The National Taxpayer Advocate's 2017 Annual Report to Congress, written by *Amicus*' Executive Director in her prior role as National Taxpayer Advocate,

24

highlights the importance of this issue. *See* Legislative Recommendation #3

("Make the Time Limits for Bringing Tax Litigation Subject to the Judicial

Doctrines of Forfeiture, Waiver, Estoppel, and Equitable Tolling . . . ."), Vol. 1, at

283-292. Her report detailed, as of December 31, 2017, many conflicting lower

court authorities as to whether judicial tax filing deadlines are jurisdictional. She

cited rulings that, in her view, misapplied the Supreme Court's precedent to several

Tax Court filings deadlines and other judicial tax filing deadlines. In her

recommendation, she relied in part on what is known as the "Taxpayer Bill of

Rights," enacted in 2015, at §7803(a)(3), which promises taxpayers "the right to

appeal a decision of the Internal Revenue Service in an independent forum"

(subparagraph (E)) and "the right to a fair and just tax system" (subparagraph (J)).

She also wrote:

> Treating the IRC time limits for commencing a judicial proceeding as
> jurisdictional leads to unfair outcomes. . . . Unrepresented taxpayers in
> particular may be less likely to anticipate the severe consequences of filing a
> Tax Court petition even one day late, and most Tax Court petitioners do not
> have representation.

2017 Report at 291. Ms. Olson's successor as National Taxpayer Advocate has

continued to seek this legislative clarification. *Nat'l Taxpayer Advocate 2024*

*Purple Book* 103–06 (2024).

Access to the Tax Court's deficiency jurisdiction matters *greatly* – because

the Tax Court is the only place where a court reviews the IRS's proposed

deficiency *before* the actual harm of assessment or collection occurs – a vital issue for moderate and low-income taxpayers and many small businesses, who cannot instead afford to pay the full deficiency and sue for a refund in district court or the Court of Federal Claims. Given the importance of a taxpayer's right to challenge the IRS in an independent forum, any ambiguity as to whether §6213(a)'s filing deadline is jurisdictional should be construed in favor of taxpayers.

## CONCLUSION

For these reasons, this Court should reject the Tax Court's position that the filing deadline in §6213(a) is jurisdictional and rule that the appellants may present arguments to the Tax Court as to why her late filed deficiency petition should be evaluated for equitable tolling.

Respectfully Submitted,

/s/*AUDREY PATTEN*

    Audrey Patten,
    *Counsel for Amicus*
    Director, Tax Litigation Clinic at
    the Legal Services Center
    of Harvard Law School
    122 Boylston Street
    Jamaica Plain, MA 02130
    (617) 384-0734
    apatten@law.harvard.edu

/s/*Carl Smith*

    Carlton M. Smith, Esq.
    *Counsel for Amicus*
    255 W. 23rd Street #4AW
    New York, NY 10011
    (646) 230-1776
    carltonsmth@aol.com

/s/*KEITH FOGG*

    Prof. Emeritus T. Keith Fogg
    *Counsel for Amicus*
    Tax Litigation Clinic at
    the Legal Services Center
    of Harvard Law School
    122 Boylston Street
    Jamaica Plain, MA 02130
    (617) 390-2532
    kfogg@law.harvard.edu

Dated: September 17, 2024

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.     This document complies with the type-volume limit of Fed. R. App. P. **29(a)(5) and 32(a)(7)(B)** because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

**X**     this document contains 6418 words, excluding the items exempted by Fed. R. App. P. 32(f) **or**

☐     this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

**X**     this document has been prepared in a proportionally spaced typeface using **Microsoft Word** in **Times New Roman size 14 font**, **or**

☐     this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(/s/__Audrey Patten_____

Attorney for _____*Amicus Curiae,* Center for Taxpayer Rights__

Dated: September 17, 2024

**<u>Certificate of Service</u>**

I hereby certify that this document was filed through the ACMS system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 13, 2024.

*/s/ Audrey Patten*

Attorney for _____ *Amicus Curiae,* Center for Taxpayer Rights__

Dated:  September 17, 2024.