# No. 24-1557

## In the United States Court of Appeals
## For the Second Circuit

MARK BULLER & SARAH BEATTY

*Petitioners-Appellants*

v.

COMMISSIONER OF INTERNAL REVENUE

*Respondent-Appellee*

No. 25011-22
Hon. Kathleen Kerrigan

## APPELLANTS' REPLY BRIEF

Trisha S. Farrow (SBN #032618)
tfarrow@frgalaw.com
Brandon A. Keim (SBN # 028831)
bkeim@frgalaw.com
Frazer, Ryan, Goldberg & Arnold, LLP
1850 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
602-200-7347

*Attorneys for Appellants*
Mark Buller, Sarah Beatty

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................ i

TABLE OF AUTHORITIES ..................................... ii

INTRODUCTION ............................................. 1

ARGUMENT ................................................. 1

I.  Congress did not clearly state the Section 6213(a) filing deadline is jurisdictional. ........................................... 1

   A. The text of Section 6213(a) does not indicate the 90-day time bar is jurisdictional. ................................ 2

   B. The context of Section 6213(a) does not clearly indicate the filing deadline is jurisdictional. ......................... 6

     1. Section 6213(a)'s placement and role in the Code does not indicate the filing deadline is jurisdictional. ............................. 6

     2. Section 6213(a)'s context is no different from other nonjurisdictional time limits. ..................... 13

   C. The historical treatment of Section 6213(a) fails to demonstrate the 90-day deadline is jurisdictional. ................. 15

   D. Treating the 90-day deadline as nonjurisdictional would have little to no effect on the IRS's ability to assess and collect tax. .......... 18

II. Section 6213(a)'s deadline is subject to equitable tolling. .......................... 23

   A. The 90-day deadline is similar to the 30-day deadline in I.R.C. § 6330, considered in *Boechler*. ................. 23

   B. The 90-day deadline is not a central provision in tax law. ................. 26

CONCLUSION ............................................... 27

CERTIFICATE OF COMPLIANCE ............................... 29

i

# TABLE OF AUTHORITIES

**CASES:** **Page(s)**

*Appeal of Everett Knitting Works*,
    1 B.T.A. 5, 6 (1924) ...................................................................... 12

*Appeal of United Paper Co.*,
    4 B.T.A. 257, 258 (1926) ............................................................. 12

*Boechler, P.C. v. Commissioner*,
    596 U.S. 199, 203, 206–08, 210 (2022) ............................... *passim*

*Culp v. Commissioner*,
    75 F.4th 196 (3d Cir. 2023) .................................................. 15, 22

*Dodson v. Commissioner*,
    162 T.C. No. 1, 5 (2024) ............................................................. 17

*Dolan v. United States*,
    560 U.S. 605, 611–613 (2010) ..................................................... 6

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546, 568 (2005) ............................................................ 17

*Gonzalez v. Thaler*,
    565 U.S. 134, 141–42, 143, 146–47 (2012) ...................... 4, 6, 15

*Hallmark Research Collective v. Commissioner*,
    159 T.C. 126 (2022) .................................................................... 14

*Harrow v. Dep't of Def.*,
    601 U.S. 480, 484 (2024) .............................................................. 1

*Henderson ex rel Henderson v. Shineski*,
    562 U.S. 428, 435, 439–40 (2011) ....................................... 1, 5–6

*In re Burns*,
    974 F.2d 1064, 1066 (9th Cir. 1992) ............................................ 9

*Irwin v. Dep't of Veterans Affairs,*
    498 U.S. 89, 95–96 (1990) ........................................................ 23

*Lozano v. Montoya Alverez,*
    572 U.S. 1, 10–11 (2014) .......................................................... 23

*MOAC Mall Holdings LLC v. Transform Holdco LLC,*
    598 U.S. 288, 298 (2023) ....................................................... 1–2

*Pace v. DiGuglielmo,*
    544 U.S. 408, 418 (2005) ........................................................ 16

*Reed Elsevier, Inc. v. Muchnick,*
    559 U.S. 154, 166 (2010) .......................................................... 2

*Santos-Zacaria v. Garland,*
    598 U.S. 411, 421, 422–23 (2023) ......................................... 4, 5

*Sebelius v. Auburn Reg'l Med. Ctr.,*
    568 U.S. 145, 154–55 (2013) ................................................. 4, 5

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83, 91 (1998) ............................................................ 18

*United States v. Brockamp,*
    519 U.S. 347, 351–52 (1997) ..................................... 23–24, 26

*United States v. Dalm,*
    494 U.S. 596, 603 n.4 (1990) ................................................. 10

*United States v. Wong,*
    575 U.S. 402, 410, 412 (2015) ..................................... 1, 12, 27

*Wilkins v. United States,*
    598 U.S. 152, 159 (2023) .......................................................... 2

**STATUTES:**                                                        **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6212 ...................................................................... 16, 18, 24
§ 6213(a) ...................................................................... *passim*
§ 6213(c) ...................................................................... 19
§ 6213(f) ...................................................................... 7, 8
§ 6214(a) ...................................................................... 3, 4
§ 6330 ...................................................................... 6, 8, 23, 25
§ 6330(d) ...................................................................... 8, 13, 15, 17, 24, 26
§ 6404(a) ...................................................................... 8, 19
§ 6511 ...................................................................... 24, 26
§ 6511(a) ...................................................................... 24
§ 6511(b) ...................................................................... 25
§ 6511(c) ...................................................................... 25
§ 6511(d) ...................................................................... 25
§ 6512 ...................................................................... 10
§ 6512(a) ...................................................................... 10, 11, 12, 20
§ 6512(b) ...................................................................... 3, 4
§ 7422(e) ...................................................................... 9
§ 7442 ...................................................................... 3, 4
§ 7459 ...................................................................... 10
§ 7459(c) ...................................................................... 10
§ 7459(d) ...................................................................... 10, 11, 12, 20
§ 7502 ...................................................................... 26
§ 7503 ...................................................................... 26
§ 7508A ...................................................................... 26

Revenue Act of 1924, Pub. L. 68-176, 43 Stat. 253 (1924)

§ 274(a) ...................................................................... 3
§ 900(e) ...................................................................... 3

Revenue Act of 1926, Pub L. No. 69-20, 44 Stat. 9 (1926)

§ 274(e) ...................................................................... 3
§ 284(d) ...................................................................... 10, 11, 12
§ 284(e) ...................................................................... 3
§ 906(c) ...................................................................... 11

iv

Revenue Act of 1928, Pub. L. No. 70-562, 45 Stat. 791 (1928)

§ 601 ..................................................................................................11

**MISCELLANEOUS:**

*Ambiguities and Agency Cases: Reflections After (Almost) Ten Years on the Bench*, Honorable Raymond M. Kethledge, 70 Vand. L. Rev. En Banc. 315, 318–19 (2017) ...................................................... 17

Br. for Resp't in Opp'n at 13, 23, 28–29, *Boechler P.C. v. Commissioner*, 596 U.S. 199 (9th Cir. 2020) (20-1472) .............................................. 8, 13

H.R. Conf. Rep. No. 69-359 (1926) ...................................................11

H.R. Conf. Rep. No. 105-599 (1998) ................................................ 16

I.R.M. 8.20.7.24.1 (Sept. 28, 2018) .................................................. 19

I.R.M. 8.20.7.24.2(3) (Sept. 28, 2018) .............................................. 19

I.R.M. 25.3.8.2 (Aug. 5, 2021) .......................................................... 19

I.R.S. CCN CC-2010-012, 2010 WL 2801002 (July 8, 2010) .............................. 9

I.R.S., *2023 Data Book*, 4, 56 ..................................................... 13, 27

Kelly McLaughlin, *The Chances of Getting Bitten by a Shark while You're Swimming at the Beach are Surprisingly Low*, Business Insider, Dec. 5, 2023, https://www.businessinsider.com/shark-attacks-what-are-odds-of-getting-bitten-2018-7 ................................................... 27

Lonnie Sheckhtman, *How Likely are You to get Hit by a Meteor?*, The Christian Science Monitor, Feb. 9, 2016, https://www.csmonitor.com/Science/Spacebound/2016/0209/How-likely-are-you-to-get-hit-by-a-meteor ................................................. 27

National Institute of Justice Special Report, *Wrongful Convictions: The Literature, the Issues, and the Unheard Voices*, 3 (Dec. 2023) .............................................. 27

National Weather Service, *How Dangerous is Lightning?*, www.weather.gov/safety/lightning-odds ................................................ 14

The New Oxford American Dictionary 599 (3d ed. 2010) .................................... 4

Treas. Reg. § 301.6404-1(a) .................................................................. 9

U.S. Tax Court, *Congressional Budget Justification,*
*Fiscal Year 2024*, 19 (Feb. 1, 2023)................................................. 13, 27

## INTRODUCTION

Filing deadlines rarely carry jurisdictional consequences. "Time and time again," the Supreme Court has "described filing deadlines as 'quintessential claim-processing rules'" that do "not deprive the court of authority to hear the case." *United States v. Wong*, 575 U.S. 402, 410 (2015) (*quoting Henderson ex rel Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The 90-day deadline to file a petition in the Tax Court is no different than the slew of other "quintessential claim processing," rules the Supreme Court declined to imbue with jurisdictional consequences. The Supreme Court demands a filing deadline contain a "clear statement" tying it to a court's jurisdiction before imposing harsh jurisdictional consequences. *Boechler P.C. v. Commissioner*, 596 U.S. 199, 203, 207–08 (2022).

The arguments raised by the Commissioner fall short of showing the 90-day filing deadline in I.R.C. § 6213(a) ("Section 6213(a)") is one of the "rare statute of limitations that can deprive a court of jurisdiction." *Wong*, 575 U.S. at 410.

## ARGUMENT

### I. Congress did not clearly state the Section 6213(a) filing deadline is jurisdictional.

The 90-day deadline in Section 6213(a) does not satisfy the Supreme Court's demand for a "clear statement." *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024). And "the statement must indeed be clear; it is insufficient that a jurisdictional reading is 'plausible,' or even 'better,' than nonjurisdictional alternatives." *MOAC Mall*

1

*Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023). The jurisdictional analysis of a statute is "discerned by looking to the condition's text, context, and relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

## A. The text of Section 6213(a) does not indicate the 90-day deadline is jurisdictional.

When a court's jurisdictional grant is separated from the filing deadline, it is strong evidence that the filing deadline is nonjurisdictional. *See, e.g.*, *Wilkins v. United States*, 598 U.S. 152, 159 (2023). The opposite is not true. Even if the jurisdictional grant and the filing deadline are in the same sentence, is not enough to show that Congress clearly intended the filing deadline to be jurisdictional. *Boechler*, 596 U.S. at 206–207. The key inquiry is whether there is a "clear tie between the deadline and jurisdictional grant." *Boechler*, 596 U.S. at 207.

The Tax Court's jurisdictional grant is separated from the 90-day filing deadline. The Commissioner contends that the jurisdictional grant is contained in Section 6213(a) even through it is "admittedly implicit" and "does not use the word 'jurisdiction.'" (Answering Br. at 20). There is no need for Section 6213(a) to implicitly grant the Tax Court jurisdiction, because other Code[1] sections do so

---

[1] All references to "section," "Code," or I.R.C." are to the Internal Revenue Code unless otherwise stated.

*explicitly*. Section 7442 grants the Tax Court "such jurisdiction as is conferred on [it] by this title." Section 6214(a) grants it "jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined" exceeds the amount stated in the notice of deficiency. And I.R.C. § 6512(b)(1) gives it "jurisdiction to determine the amount of [an] overpayment."

Congressional history supports the conclusion that the Tax Court's jurisdictional grant is not contained in Section 6213(a). Section 6213(a)'s original predecessor, section 274(a) of the 1924 Revenue Act, contained similar language to the modern Section 6213(a). *See* ch. 234, § 274(a), 43 Stat. 253, 297 ("Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals. . ."). But it was section 900(e) of the 1924 Revenue Act that contained the Tax Board's express grant of jurisdiction, not section 274(a). *See id.*, § 900(e), 43 Stat. at 337. Section 900(e) stated "The Board . . . shall hear and determine appeals filed under [certain statutes]." *Id.* The 1926 Revenue Act replaced section 900(e) with the predecessor of I.R.C. § 7442 containing the Tax Court's general grant of jurisdiction. The 1926 Revenue Act also added the predecessors of I.R.C. §§ 6214(a) and 6512(b) which specifically addressed the Board's jurisdiction to redetermine deficiencies. Ch. 27, §§ 274(e), 284(e), 1000, 44 Stat. 9, 56, 67, 106. The most logical conclusion is that those provisions were enacted to serve as the

basis for the Board's jurisdiction and their modern counterparts—I.R.C. §§ 7442, 6214(a), and 6512(b) serve the same function for the Tax Court now.

The Commissioner relies on the phrase "even if" in I.R.C. § 6214(a) to conclude that it merely enlarges the Tax Court's already existing jurisdiction by allowing it to determine deficiencies exceeding that stated in the notice of deficiency. (Answering Br. at 23). The Commissioner's interpretation of I.R.C. § 6214(a) requires one to ignore the phrase's commonly understood meaning. The use of the phrase "even if" grants the Tax Court jurisdiction to determine the correct amount of deficiency *regardless* of whether the deficiency exceeds the amount stated in the notice. *See e.g.*, The New Oxford American Dictionary 599 (3d ed. 2010) (defining "even if" as despite the possibility that; no matter whether.").

Even if the Tax Court's jurisdictional grant is contained in Section 6213(a), many of the Supreme Court's decisions in its long line of cases attempting "to bring some discipline to the use of the term jurisdiction," conclude that such closeness is irrelevant. *See Boechler* 596 U.S. at 206–07; *Santos-Zacaria* v. *Garland*, 598 U.S. 411, 421 (2023); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154–55 (2013); *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012).

The Commissioner contends that because I.R.C. § 6213(a) contains two jurisdictional prerequisites—the IRS must issue a notice of deficiency, and a taxpayer must file a petition in the Tax Court—that the 90-day deadline in the same

4

subsection must also be jurisdictional. (Answering Br. 20) The Commissioner is wrong. The Supreme Court has repeatedly stated that "even if some provisions in a statutory section qualify as jurisdictional, that does not suffice to establish that all others are." *Santos-Zacaria*, 598 U.S. at 422–23; *see Auburn*, 568 U.S. at 155. The Commissioner cites *Auburn* and *Henderson* as support for his argument, but both cases must be stretched to their limit to be construed in the Commissioner's favor. (Answering Br. 20). In *Auburn*, the Supreme Court rejected the exact argument the Commissioner posits here. There, the amicus argued that because the statute at issue contained three pre-filing requisites, two of which were jurisdictional, the filing deadline listed as the third prerequisite in the same section must also be jurisdictional. *Auburn*, 568 U.S. at 155. The Court stated that it previously rejected a similar argument and reiterated that a nonjurisdictional requirement "does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Id.* Similarly, *Henderson* does not stand for the proposition that the jurisdictional nature of nearby requirements rubs off on a nonjurisdictional deadline. *Henderson*, 562 U.S. at 439. Instead, the *Henderson* opinion explains that the filing deadline at issue fell under the subchapter titled "Procedure" not the subchapter captioned, "Jurisdiction; finality of decisions." *Id.* at 439–40. *Henderson* did not address, nor consider, an argument similar to the Commissioner's.

### B. The context of Section 6213(a) does not clearly indicate the filing deadline is jurisdictional.

The Supreme Court has enumerated numerous factors in considering whether a statute's context indicates a jurisdictional nature, including the Court's treatment of similarly worded statutes, *Gonzalez*, 565 U.S. at 143,[2] the presence of exceptions to the deadline, *Dolan v. United States*, 560 U.S. 605, 611–13 (2010), congressional history and the intended purpose of the statute, *see Henderson*, 562 U.S. at 440, and Congress's use of clear jurisdictional terms in other sections within the same Act, *Boechler*, 596 U.S. at 206.

### 1. Section 6213(a)'s placement and role in the Code does not indicate the filing deadline is jurisdictional.

Finding the 90-day filing deadline in Section 6213 nonjurisdictional will not skew the "delicate balance" in the "constellation of statutes affecting the powers of the Tax Court, the IRS, and other courts" as the Commissioner prophesizes. (Answering Br. at 30–31). While the Commissioner correctly asserts the Tax Court's power to enjoin assessments is tied to the 90-day filing deadline, that tie is not evidence that the deadline is jurisdictional. The Supreme Court addressed, and rejected, a similar argument in *Boechler*. There, the Tax Court's jurisdiction to enjoin collection was tied to the 30-day filing deadline. *See* I.R.C. § 6330. The Court

---

[2] *See* Opening Brief at 19–20 for a detailed discussion of this factor.

was "unmoved—and not only because the scenario the Commissioner posits would arise only from the IRS's own recalcitrance." *Boechler*, 596 U.S. at 207. The Court explained that while the tie between the deadline and the Tax Court's injunction power, may strengthen the government's argument, given the multiple ways to interpret the statute, a jurisdictional interpretation was far from clear. *Id.* at 207–08. Moreover, the fact that the Tax Court's injunction power was so clearly tied to the 30-day deadline only "highlight[ed] the lack of such clarity" between the jurisdictional grant and the deadline. *Id.* at 208.

The same is true with Section 6213(a). The lack of tie between the Tax Court's jurisdiction and the filing deadline is only made more obvious by the Tax Court's injunction authority being so clearly dependent on a petition filed within the 90-day period. Congress knew how to condition the Tax Court's injunction jurisdiction on the 90-day filing deadline, yet it failed to condition its jurisdiction to redetermine deficiencies on the deadline in the same way. If the same argument did not sway the Supreme Court in *Boechler*, it should not sway this Court in its interpretation of Section 6213.

Next the Commissioner claims that the exceptions to the 90-day filing deadline contained in the first and fifth sentences of Section 6213(a) and the exception in I.R.C. § 6213(f) indicate the deadline is jurisdictional. (Answering Br. at 34–36). These exceptions extend the deadline if the last day to petition falls on a

7

Saturday, Sunday, or legal holiday, and state that a petition is treated as timely filed if it is mailed prior to the date listed as the last day to petition in the notice. Section 6213(f) suspends the time to file a petition in Tax Court during an automatic bankruptcy stay. The Commissioner's argument misses the mark. All three of these exceptions are also exceptions to the 30-day filing deadline in I.R.C. § 6330, which was found nonjurisdictional by the Supreme Court in *Boechler*.

The Commissioner made the same argument with respect to 6330(d), regarding the extension to petition during an automatic bankruptcy stay in *Boechler*, and it was rejected by the Supereme Court. *Boechler*, 596 U.S. at 210; Br. for the Resp't in Opp'n at 28–29, *Boechler*, 596 U.S. 199 (No. 20-1472). The Supreme Court concluded that the limited exceptions were evidence the deadline was nonjurisdictional. *Boechler*, 596 U.S. at 210. If the exceptions were insufficient to clear the "high bar" demanded by the Supreme Court in *Boechler*, then they are insufficient to show Section 6213(a) deadline is jurisdictional.

According to the Commissioner, under I.R.C. § 6404(a), the IRS cannot abate an assessment if an untimely petition were accepted due to equitable tolling "because the IRS's abatement power is limited, and it covers liabilities 'erroneously or illegally assessed.'" (Answering Br. at 57 *quoting* I.R.C. § 6404(a)(3)). The Commissioner conveniently fails to mention the other subsections under I.R.C. § 6404(a) authorizing abatements. Specifically, under I.R.C. § 6404(a)(1) the IRS can

abate assessed tax if it "is excessive in amount." "Excessive" means "in excess of the correct tax liability." Treas. Reg. § 301.6404-1(a); I.R.S. CCN CC-2010-012, 2010 WL 2801002 (July 8, 2010); *see In re Burns*, 974 F.2d 1064, 1066 (9th Cir. 1992). Therefore, if the Tax Court enters a decision in a case where the filing deadline was equitably tolled after the IRS made an assessment, the IRS could properly abate any portion of the assessed tax to conform with the Tax Court's decision.

Section 7422(e) prohibits the Tax Court and district court from exercising concurrent jurisdiction over the same matter and provides a stay of district court proceedings, "during the *period of time in which a taxpayer may file a petition* with the Tax Court for a redetermination of the assessed deficiency." However, that section does not specifically reference the 90-day deadline. Moreover, the "time in which a taxpayer may file a petition with Tax Court" already varies depending on whether the taxpayer resides outside the United States. I.R.C. § 6213(a). Further, the prohibition in I.R.C. § 7422(e) lasts 60 days past the time to file a petition in Tax Court, allowing time for the Tax Court to determine whether a petition can be accepted as timely. The relationship between Section 6213(a) and I.R.C. § 7422(e) cannot be read as a clear statement tying the Tax Court's jurisdiction to the 90-day deadline.

9

Next, the Commissioner argues that if the 90-day deadline were nonjurisdictional, then a decision dismissing a taxpayer's petition for lateness would prevent the taxpayer from filing a refund suit. (Answering Br. at 44–47). He claims that I.R.C. § 7459 gives nonjurisdictional dismissal orders preclusive effect, but a jurisdictional dismissal "simply restores the status quo ante." (*Id.* at 45–46). The Commissioner states the preclusive effect of I.R.C. § 7459(d) applies to all Tax Court decisions subject to the purported exceptions stated therein. (*Id.*). The Commissioner's argument fails for several reasons.

First, I.R.C. § 7459(d) is concerned with procedure, not preclusion. The first sentence of § 7459(d) states that when the Tax Court dismisses a case, it is "considered as its decision that the deficiency is the amount determined by the [IRS]" regardless of whether the dismissal is for lack of jurisdiction. The second sentence, is not an exception to the rule. Instead, it addresses the different issue of whether the Tax Court must enter an order stating the amount of the deficiency as determined by the IRS to facilitate the appealability rules in I.R.C. § 7459(c).

Second, the statute addressing preclusion is I.R.C. § 6512(a), not § 7459. When Congress enacted procedures to allow the direct appeal of Tax Board decisions, it added what is now I.R.C. § 6512 to the 1926 Revenue Act. *See* ch. 27, § 284(d), 44 Stat. at 67; *United States v. Dalm*, 494 U.S. 596, 603 n.4 (1990). Section 6512(a) precludes a taxpayer from filing a claim for refund if he petitions the Tax

10

Court for the same period, but *only* if the Tax Court petition is filed "*within the time prescribed in section 6213(a).*" I.R.C. § 6512(a) (emphasis added). If a taxpayer files his petition late, then he is not precluded from filing a refund suit by I.R.C. § 6512(a). *Id.*

At the same time Congress enacted section 284(d), it also enacted the predecessor to I.R.C. § 7459(d). Ch. 27, § 1000, 44 Stat. at 107. Section 906(c), the predecessor of I.R.C. § 7459(d), did not contain an exception for dismissals for lack of jurisdiction. The conference report from the Revenue Act of 1926 indicates section 906(c) was not intended to preclude subsequent refund suits where the taxpayer filed a late petition and clarifies that section 284(d) was modified specifically to add the statutory exception from res judicata for refunds where the filing deadline was not met. H.R. Conf. Rep. No. 69-359 (1926). The report states "in the case of dismissal upon the ground that the petition was filed too late, this provision is primarily necessary in order that the amount of the bond may be fixed. . . but a suit for refund in such case, of course, is not barred." *Id.* at 53.

The jurisdictional exception in the current last sentence of I.R.C. § 7459(d) was added, without any committee report or comment, two years later by Section 601 of the Revenue Act of 1928. The Commissioner contends that the 1928 amendment was intended to address the Tax Board's *United Paper* decision determining the Board had no jurisdiction over untimely petitions. (Answering Br.

11

at 49); *Appeal of United Paper Co.*, 4 B.T.A. 257, 258 (1926). This interpretation is illogical. Congress already addressed the problem of untimely petitions with the 1926 amendment. Instead, the 1928 amendment was likely meant to address other circumstances in which a case is dismissed for lack of jurisdiction such as when the notice of deficiency is sent to the wrong address. Further, if the 1928 amendment regarding jurisdictional dismissals, was intended to address late-filed petitions, then Congress would have simultaneously removed the late filed petition exception from res judicata provision in section 284(d). Under the Commissioner's view, the late-filed petition exception from res judicata in I.R.C. § 6512(a) is surplusage.

Even assuming I.R.C. § 7459(d) makes nonjurisdictional dismissals preclusive, it still does not mean that the 90-day deadline is jurisdictional. Congress created the Tax Board to help taxpayers, and more taxpayers would be helped by allowing equitable tolling than would be hurt by giving preclusive effect to dismissals for untimeliness. *See, e.g.*, *Appeal of Everett Knitting Works*, 1 B.T.A. 5 (1924). (Congress sought to mitigate the "harsh rule of payment first and litigation afterwards.") Further, preclusion is not automatic. The Commissioner could waive the defense to avoid "perverse effect of barring the taxpayer from later challenging the amount in a refund suit." (Answering Br. at 46 *quoting Wong*, 575 U.S. at 409).

12

## 2. Section 6213(a)'s context is no different from other nonjurisdictional time limits.

The Commissioner claims the 30-day deadline in I.R.C. § 6330(d), is different from the 90-day deadline because the 30-day deadline concerned only a "single post-assessment collection action," and does not "impact all the IRS's other avenues for collection, let alone disrupt the assessment on which all administrative collection depends." (Answering Br. at 50). The Commissioner argued the opposite in *Boechler* claiming the 30-day deadline was jurisdictional because of its "place in the broader, highly reticulated statutory scheme for tax collection," and its "part [in] a complex, interconnected statutory scheme of tax collection." Br. for Resp't in Opp'n 13, 23, *Boechler*, 596 U.S. 199 (No. 20-1472). Regardless of the Commissioner's changed view on I.R.C. § 6330(d), he vastly over exaggerates the role Section 6213(a)'s deadline plays in tax administration.

262,829,039 returns were filed in fiscal year ("FY") 2022. I.R.S., *2023 Data Book* 4 (table 4). Only a small subset of those returns end up as the basis for a Tax Court petition. The Tax Court reported that 27,854 deficiency petitions were filed in FY 2022, meaning that only .011% of filed tax returns form the basis of a Tax Court petition. U.S. Tax Court, *Congressional Budget Justification, Fiscal Year 2024*, 19 (Feb. 1, 2023). By searching the Tax Court's filing system, DAWSON, with the search terms "'motion to dismiss' + 'lack of jurisdiction' + timely" I identified 451

13

cases the IRS moved to dismiss as untimely that were dismissed during FY 2022.[3]

Using the search terms "'show cause' + timely," I identified an additional 73 cases where the Tax Court issued an order to show cause why the case should not be dismissed, all of which were ultimately dismissed. The two searches yielded a total of 524 late-filed petitions that were addressed in FY 2022.[4] Of those 524 petitions, the taxpayer either did not respond or did not object 452 times (73%). In the 72 instances in which the taxpayer responded, only 40 responses[5] raised an argument that could be construed as an equitable tolling claim. Accordingly, only .14% of Tax Court petitions have the potential for equitable tolling. That is .000015% of all tax returns filed. The American taxpayer is four hundred times more likely to be struck by lightning than to raise equitable tolling after late filing a deficiency petition in Tax Court.[6]

---

[3] To address the Tax Court's stay on dismissal orders while *Hallmark Rsch. Collective v. Commissioner,* 159 T.C. 126 (2022), was pending, I extended the date searched to December 10, 2022. (*See* Amicus Br. at 5 n.4). On average 139 days passed between the date the IRS filed its motion to the date of dismissal during FY 2022. Therefore, if the IRS filed a motion to dismiss prior to June 14, 2022, and the motion was granted on or before December 10, 2022, I included it in the data for FY 2022. 109 motions were granted during this time frame.

[4] The Amicus inadvertently double counted a subset of 20 cases in its sample of late filed petitions dismissed in February and March of 2022.

[5] This includes 10 responses where the contents are unknown.

[6] National Weather Service, *How Dangerous is Lightning?,* www.weather.gov/safety/lightning-odds.

To suggest the 90-day deadline in Section 6213(a) is the "lynchpin of a sprawling and complex statutory scheme designed to fund the federal government" borders absurdity. (Answering Br. at 50).

### C. The historical treatment of Section 6213(a) fails to demonstrate the 90-day deadline is jurisdictional.

While many circuit courts, including this Court have stated the 90-day deadline is jurisdictional, only the Third Circuit has truly considered the matter after the Supreme Court's efforts to "bring some discipline" to the use of the term "jurisdiction." *Gonzalez*, 565 U.S. at 141; *see Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023). The Commissioner contends that prior to the *Culp* decision, all the circuits unanimously held the deadline to be jurisdictional, and Congress's decision to reenact Section 6213(a) without change "suggests that Congress meant to incorporate" this view into the law. (Answering Br. at 54). Like many of the Commissioner's arguments, this one too has been rejected by the Supreme Court. In *Boechler*, the Commissioner explained that lower courts uniformly held the 90-day deadline in Section 6213(a) to be jurisdictional, Congress was aware of those holdings, and therefore drafted the filing deadline in I.R.C. § 6330(d) to have the same effect. *Boechler*, 596 U.S. at 208. The Supreme Court explained this was the "Commissioner's weakest argument," because the cases cited predated its efforts to narrow the meaning of the word jurisdiction, and only "'a long line of Supreme Court decisions left undisturbed by Congress,'" is indicative of jurisdictional intent. *Id.*

15

The Commissioner next relies on a congressional report from the Internal Revenue Service Restructuring and Reform Act of 1998 stating if a deficiency petition is not filed within the 90-day deadline, then "the Tax Court does not have jurisdiction to consider the petition." (Answering Br. at 54–55 *quoting* H.R. Conf. Rep. No. 105-599, at 289). This statement was offered in explanation for an amendment to I.R.C. § 6212 which allows a taxpayer to rely on the 90th day stated in the notice even if that date is incorrect. The Commissioner contends that because equitable tolling is generally available where a party is tricked or induced by his adversary to miss a deadline, that Congress intended to legislate "a fix. . . on equitable tolling grounds." (Answering Br. at 35.) No great weight should be given to this statement.

First, Congress's enactment of this "fix" created a bright line rule for reliance on the date in the notice of deficiency thereby relieving the court from conducting a facts and circumstances inquiry on equitable tolling grounds. For a court to equitably toll a deadline it considers several factors such as diligence and prejudice, and there may be circumstances in which a taxpayer files his petition outside the 90-day period, but before the date stated in the notice where equitable tolling would not apply. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). For example, if the notice correctly stated the last day and month to file, but inadvertently extended the deadline by two years, then the taxpayer likely should have known that the date was

16

incorrect and the IRS may be unfairly prejudiced by such a late filed petition. In such a circumstance a court may deny equitable tolling. Congress eliminated the need for such an analysis by creating a bright-line rule. *See Dodson v. Commissioner*, 162 T.C. No. 1, 5 (2024) ("Congress could have used a narrower means to advance the purposes. . . of the last sentence of section 6213(a), but it did not.").

Second, legislative history in general is not always a reliable indication of Congress's intent or understanding. The Supreme Court expressed this sentiment stating, "legislative history is itself often murky, ambiguous, and contradictory," and "reliance on legislative materials like committee reports, which themselves are not requirements of Article I, may give unrepresentative committee members—or worse yet, unelected staffers and lobbyists—both the power and incentive to attempt strategic manipulations of legislative history." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). As a Sixth Circuit judge describing his experience as congressional staffer stated, it is, "rather like being a teenager at home while your parents are away for the weekend: there was no supervision. . . . Indeed I submit that most members of Congress. . . have no idea at all about what is in the legislative history for a particular bill." Hon. Raymond M. Kethledge, *Ambiguities and Agency Cases: Reflections After (Almost) Ten Years on the Bench*, 70 Vand. L. Rev. En. Banc. 315, 318–19 (2017).

17

To the extent the congressional report cited by Commissioner is reliable, it is still not a "clear statement" that the 90-day deadline is jurisdictional. Much like courts making "drive by" jurisdictional rulings, Congress is also fully capable of using the term "jurisdiction" in an expansive and imprecise manner. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). There is nothing in the report indicating any analysis or further discussion of Congress's views of the Tax Court's jurisdiction. Instead, the statement was merely a general introductory statement to explain the amendment to I.R.C. § 6212.

### D. Treating the 90-day deadline as nonjurisdictional would have little to no effect on the IRS's ability to assess and collect tax.

If the deadline is nonjurisdictional then the IRS's assessment and abatement requirements would continue unimpeded. The Commissioner makes much ado about a scenario in which the IRS makes an assessment after the 90-day deadline has expired and the Tax Court subsequently applies equitable tolling to allow an untimely petition. (Answering Br. at 56–57). An "assessment" is a rather amorphous thing. The Commissioner correctly states that "neither taxpayers nor the Tax Court are in the best position to know when an assessment has occurred." (*Id.* at 39). That is because it is merely the IRS's action of recording a tax deficiency. Generally, the IRS does not send a notice to the taxpayer when it assesses tax. Instead, it sends pre-assessment notices allowing a taxpayer to challenge the proposed amount of tax and

post-assessment notices attempting to collect the assessed tax. It is not unreasonable to believe that the vast majority of taxpayers are not concerned with the assessment itself, but the collection of the assessed tax. Afterall, a taxpayer may not even know when an assessment has occurred. (Answering Br. at 39). Already, the IRS has a method of tracking cases in litigation; and it must because it is "not allowed to pursue collection in most circumstances when there is pending litigation." I.R.M. 8.20.7.24.2(3) (9-28-2018). To prevent unauthorized collection during litigation, the IRS inputs a litigation freeze code on the taxpayer's account. *Id.* The "freeze code" is input for every petition filed in Tax Court, regardless of whether the petition is timely. *Id.*; *see also* I.R.M. 25.3.8.2 (08-05-2021). The code remains on the account until the Tax Court decision is final plus an additional ten days. I.R.M. 8.20.7.24.1 (9-28-2018). This procedure would ensure collection does not occur as the court determines whether to accept a late petition on equitable tolling grounds.

Further, contrary to the Commissioner's claims, the IRS is very clearly able to abate this hypothetical legally assessed amount, though he failed to cite the provision allowing such an abatement. (Answering Br. at 57). The Commissioner asks, "could the IRS simply abate an assessment made under Section 6213(c) if an untimely petition were accepted after equitable tolling?" *Id.* Yes, the IRS could. As explained on pages 8–90, *supra*, I.R.C. § 6404(a)(1) allows the IRS to abate an

excessive assessment which includes any assessment exceeding the correct amount of tax.

"And what about Section 6512(a), which works together with Section 7459(d) to bar successive litigation of the same tax dispute?" (Answering Br. at 58). Well, the plain language of I.R.C. § 7459(d) excludes untimely petitions from the bar on subsequent refund suits, but that does not mean "noncompliant taxpayers can get" two bites at the "judicial apple." (*Id.* at 58–59). Though there is no statutory prohibition preventing a taxpayer from filing a late petition in Tax Court and subsequently filing a refund suit, the common law doctrine of res judicata still applies. If the Tax Court tried a case on its merits, then of course res judicata would apply, but if the Tax Court did not apply equitable tolling to a late petition, then the taxpayer would remain free to pursue his day in court by filing a refund suit.

Next the Commissioner claims that Mark and Sarah's "amicus exaggerates the Tax Court's burden to police Section 6213(a)'s jurisdictional deadline," after all, "it is simple math." (Answering Br. at 60). In FY 2022, the Tax Court addressed 524 late petitions. *See* pages 13–14, *supra*. Generally, IRS Counsel recognizes a petition is late and files a motion to dismiss for lack of jurisdiction—this happened 451 times in FY 2022. Each time the IRS files a motion to dismiss for lack of jurisdiction, the Tax Court issued an order requiring the taxpayer to respond. If the taxpayer responded then the Court issued a 2–3-page order listing all the relevant dates,

stating the evidence presented by the IRS, detailing the taxpayer's objections, and analyzing whether the petition was late.

However, this is not always the way it plays out. In FY 2022, there were 73 late-filed petitions that the IRS did not notice. Thirty-eight of those cases were set for trial, and several had been continued from previous trial sessions. In 41 of those cases, the parties had submitted signed settlement agreements to the Court. In many of those cases the parties filed motions to continue, status reports, pre-trial memorandums, and other motions which the Court read and/or ruled on. In each of those 73 cases, the Court issued a 1–2-page order to show cause why the case should not be dismissed for lack of jurisdiction. Regardless of whether the taxpayer responded to the order to show cause, the Tax Court almost always issued a 2–3-page order similar to that when it grants an IRS motion to dismiss. When the taxpayer filed a response, the taxpayer's arguments were almost always described and analyzed in the Court's dismissal order. But there are often many steps between the order to show cause and the dismissal order. In almost half of those 73 cases, the IRS, instead of responding to the order to show cause, filed a motion to dismiss, prompting another court order for the taxpayer to respond. Many times, the Court ordered a supplemental response from one of the parties, held a conference call with the parties, heard oral arguments on whether the case should be dismissed, issued an order striking the proposed decision documents, and issued orders assigning the

jurisdictional issue to a specific judge. On average, these late filed petitions remained on the Court's docket for 501 days before being dismissed for lack of jurisdiction. While it may be "simple math" to determine whether a petition is late, the inquiry and time commitment by the Tax Court does not end with the "simple" calculation.

As far as whether the Tax Court "would have to undertake fact-intensive inquiries into individual tolling claims," when a taxpayer responds to an order to show cause or an IRS motion to dismiss, as explained above, the Tax Court already does. (*See* Answering Br. at 60). The Commissioner claims, without any support, that if the deadline could be tolled, "more taxpayers would likely gamble their rights away on a late petition." (*Id.* at 61–62). Fortunately, the Court does not have to accept the Commissioner's naked assertion, because a review from post-*Culp* cases shows he is wrong.[7] By searching the Tax Court's electronic filing system, DAWSON, with the term "Culp," I identified 40 late petitions filed by taxpayers in the Third Circuit after the *Culp* decision, where the issue of late filing was raised by the IRS or sua sponte by the Court.[8] In FY 2023, there were 24 Tax Court orders regarding late-filed petitions in the Third Circuit; in FY 2024, there were nine. I estimate that 22 cases appealable to the Third Circuit were dismissed for lack of

---

[7] The Tax Court only considers equitable tolling for taxpayers in the Third Circuit due to the *Culp* decision.

[8] Places of trial listed were Philadelphia (17), New York City (14), Pittsburgh (4), Other (2). In FY 2022, (pre-*Culp*), eleven cases listed Philadelphia and three listed Pittsburgh.

jurisdiction due to untimeliness in FY 2022.[9] This is slightly less than the number of late petitions dismissed in FY 2023, it is significantly more than in FY 2024. Based on this information, there is no reason to suspect or any evidence indicating that if the 90-day filing deadline is nonjurisdictional then taxpayers will be more "likely to gamble their rights away on a late petition." (Answering Br. at 62).

## II. Section 6213(a)'s deadline is subject to equitable tolling.

Nonjurisdictional filing deadlines are presumptively subject to equitable tolling. *Boechler*, 596 U.S. at 209; *Irwin v Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). Statutes of limitations are customarily subject to equitable tolling unless it would be contrary to the text of the statute, and Congress is assumed to draft limitations periods with knowledge of this custom. *Lozano v. Montoya Alverez*, 572 U.S. 1, 11 (2014). The presumption of equitable tolling applies regardless of whether the suit is against a private party or the federal government and even when the suit implicates the government's sovereign immunity. *Irwin*, 498 U.S. at 95–96.

### A. The 90-day deadline is similar to the 30-day deadline in I.R.C. § 6330 considered in *Boechler*.

The Supreme Court has evaluated whether two other tax-related deadlines could be equitably tolled. First in *United States v. Brockamp*, 519 U.S. 347 (1997),

---

[9] This estimate is based on the assumption that the same number of Third Circuit petitioners selected New York City or another city as the place of trial in FY 2022 as in FY 2023 and 2024.

and second in *Boechler*. The Supreme Court found the deadline to file a claim for refund could not be equitably tolled in *Brockamp*, but the 30-day deadline to file a Tax Court petition in collection due process cases could be in *Boechler*.

The 90-day filing deadline in Section 6213(a) is much more similar to the 30-day filing deadline in I.R.C. § 6330(d) (*Boechler*), than the various deadlines contained in I.R.C. § 6511 (*Brockamp*). First, the language in Section 6213(a) and I.R.C. § 6330(d) is markedly similar. Section 6330(d) states a "person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination." Similarly, Section 6213(a) states, "within 90 days. . . after the notice of deficiency authorized in section 6212 is mailed. . . the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." Both deadlines state a taxpayer "may" file a petition within a stated time period after an IRS notice is mailed. Section 6511 is different. It does not contain permissive language like "may," but instead contains the mandatory word "shall," and unlike the deadlines in sections 6213(a) and 6330(d), the deadlines in I.R.C. § 6511(a) are not simply stated. Instead, I.R.C. § 6511(a) states:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect to which the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

Section 6511(b) clarifies the unmalleability of the refund deadline by prohibiting a credit or refund if the claim is not made during the stated time period. Such a prohibition is not present in either Section 6213 or I.R.C. § 6330. There is no language in the Code stating that if a deficiency petition is not timely filed, then there shall be no redetermination of the deficiency. Also, unlike the 90-day and 30-day deadlines, the deadline for filing a claim for refund can be extended by an agreement between the taxpayer and the IRS. I.R.C. § 6511(c). Section 6511(b) also limits the amount of refund that can be issued depending on whether the claim was filed within the three-year period or the two-year period. There are no limits on the amount of tax the Tax Court can redetermine in a deficiency proceeding depending on when a petition is filed.

Section 6511(d) contains "special rules" for refund claims related to bad debts and worthless securities, foreign tax credits, and when uniformed services retired pay is reduced as a result of award of disability compensation; it has "special periods of limitation" for net operating losses and capital loss carrybacks, certain credit carrybacks, self-employment tax "in certain cases," and amounts included in income subsequently recaptured under qualified plan termination. There are no "special rules" or "special periods of limitations" in Section 6213 or I.R.C. § 6330.

In contrast, the 90-day deadline and the 30-day deadline in I.R.C. § 6330 contain the same or similar limited exceptions some of which can also extend the

time to file a claim for refund under I.R.C. § 6511. *See* I.R.C. § 7502 (extending the last day to submit a claim if the last day falls on a weekend or federal holiday); I.R.C. § 7503 (containing the timely mailed/timely filed rule); I.R.C. § 7508A (extending the last day to file a claim for refund for military members serving in combat zones). However, the exceptions shared by the three deadlines were not discussed by the *Brockamp* Court. The "explicit exceptions" the Supreme Court considered relevant to the analysis in *Brockamp* were those for certain types of tax and certain types of claims such as those related to net operating losses. *Brockamp*, 519 U.S. at 351–52. However, in *Boechler*, the Supreme Court considered the same exceptions to the 30-day deadline that are available for the 90-day deadline and determined that those exceptions did not indicate the deadline was jurisdictional. *Boechler*, 596 U.S. at 207–08. Regardless of whether the exceptions to the 90-day deadline are common to the I.R.C. §§ 6330(d) and 6511 deadlines, they do not provide a clear statement that the 90-day is jurisdictional.

## B. The 90-day deadline is not a central provision in tax law.

Unlike the deadline to file a claim for refund, the 90-day deadline to file a Tax Court petition is not a central provision in tax law. In considering the deadline to file a claim for refund, the *Brockamp* Court explained that the "IRS processes more than 200 million tax returns each year," and "it issues more than 90 million refunds." *Brockamp*, 519 U.S. at 352. There, the "potential magnitude of the administrative

problem" included the potential for 90 million refund claims—meaning allowing the deadline to file a refund claim to be tolled had the potential to impact 45% of the tax base. Here, the IRS issues an estimated 1 million notices of deficiency per year. (Answering Br. at 66); I.R.S., *2023 Data Book*, 56 (table 24). Unlike the 90 million claims for refund the IRS administers each year, only 27,854 deficiency petitions are filed in Tax Court each year. U.S. Tax Court, *Congressional Budget Justification, Fiscal Year 2024*, 19. Equitable tolling of the 90-day deadline has the potential to impact .011% of the tax base. As explained on pages 13–14 *supra*, the impact would likely be significantly lower as only 1.9% of Tax Court petitions are filed outside the 90-day filing period. The realistic potential impact of allowing the 90-day filing period to be tolled is limited to .000015% of the tax base.[10]

## III.    Conclusion

Statutory filing deadlines are only jurisdictional if Congress has clearly stated so; and most are not. *Wong*, 575 U.S. at 410. Congress has not done anything special

---

[10] An individual is more likely to be hit by an asteroid (.0004%), Lonnie Shekhtman, *How likely are you to get hit by a meteor?*, The Christian Science Monitor, Feb. 9, 2016, https://www.csmonitor.com/Science/Spacebound/2016/0209/How-likely-are-you-to-get-hit-by-a-meteor, to be wrongfully convicted of a felony (.027%) National Institute of Justice Special Report, *Wrongful Convictions: The Literature, the Issues, and the Unheard Voices* 3 (Dec. 2023), or to be killed by a shark (.000027%) Kelly McLaughlin, *The Chances of Getting Bitten by a Shark while You're Swimming at the Beach are Surprisingly Low*, Business Insider (Dec. 5, 2023).

to clearly state that the filing deadline in Section 6213(a) is jurisdictional. The statute's text speaks in terms of what a taxpayer *may* do, not the Tax Court's authority. The context of the 90-day deadline, including its separation from the Tax Court's jurisdictional grant, its limited role in tax administration, and the failure of Congress to clearly tie the deadline to the Tax Court's jurisdictional grant as it did in other Code sections, does not support a jurisdictional reading. Like all nonjurisdictional filing deadlines, the 90-day deadline is presumptively subject to equitable tolling. The Commissioner has not rebutted that presumption.

Frazer, Ryan, Goldberg & Arnold, LLP

Respectfully submitted,

Dated: January 21, 2025

By: /s/ Trisha Farrow

Attorney for Appellants
Mark Buller, Sarah Beatty